IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

JAMES CLIFFORD MARSHALL, D.O.,

Plaintiff,

CASE NO.
JUDGE:

v.

LARGO MEDICAL CENTER, INC.,
A Florida Profit Corporation,

Defendant.

_______________________________________/

**PLAINTIFF'S VERIFIED COMPLAINT**

COMES NOW the Plaintiff, JAMES CLIFFORD MARSHALL, D.O. ("MARSHALL"), and hereby files this Verified Complaint to institute suit against Defendant, LARGO MEDICAL CENTER, INC. ("LMC"), and alleges as follows:

1. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000) which is the minimum jurisdictional amount of this Court.

2. Venue is proper in this jurisdiction because Defendant, LMC, does business and maintains offices Pinellas County, Florida.

3. The Plaintiff, MARSHALL, is a licensed osteopathic physician in the State of Florida, practicing in the area of cardiovascular disease, fellowship trained in interventional cardiology, and who maintains a successful practice of that profession in Largo, Florida, and is otherwise *sui juris* in all respects.

4. The Defendant, LMC, is a Florida for-profit corporation authorized to do and doing business in the State of Florida and the County of Pinellas and with a hospital campus at 201 14th St SW, Largo, FL 33770.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

5. Plaintiff, MARSHALL, is certified by the American Board of Internal Medicine in cardiovascular disease, and practices in Pinellas County, Florida. MARSHALL is an extremely qualified physician, having attained board certification in the specialty area of cardiovascular disease. MARSHALL has been board certified in cardiovascular diseases and internal medicine since 1986 and 1989, respectively. MARSHALL has been a fellow of the American College of Cardiology since 1992. MARSHALL regularly participates in continuing education in the area of his specialty for the purpose of maintaining the highest level of expertise and skill in his craft, and as required by the Department of Health, Division of Medical Quality Assurance. MARSHALL has also authored several clinical publications in the area of his specialty and is a highly regarded interventional cardiologist with a private practice in Pinellas County.

6. On April 30, 2014, LMC issued a precautionary suspension for MARSHALL's interventional cardiology privileges based on grounds that were pretextual in nature, and without medical basis, and after MARSHALL had been a member in good standing of the Defendant's medical staff holding interventional cardiology privileges for many years.

7. MARSHALL requested a hearing, as provided for in the Medical Staff Bylaws of Defendant Hospital. A hearing was held July 21-23, 2015 before a panel of three (3) physicians, REDDY, MURBACH and SHARMA. This hearing was only scheduled after many months of Plaintiff's request and unreasonable delay by Defendant.

8. On July 25, 2015, the Hearing Committee recommended the permanent revocation of MARSHALL's clinical privileges for interventional cardiology, again based on

grounds that are pretextual, and without medical basis, and after ignoring relevant medical data presented at the hearing.

9. MARSHALL was the subject of intentionally fraudulent actions by LMC, taken against him by LMC for strictly economic reasons, because MARSHALL is an independent physician and competes for patients in LMC's service area with other cardiologists, whom are either employed by LMC or contracted by LMC to provide those same services to patients in that service area.

10. The precautionary suspension of Plaintiff's medical staff privileges in interventional cardiology was completed by LMC without any review or participation by an interventional cardiologist, who would meet the requirements of a designated "peer" for purpose of a valid peer review process and procedure under the Medical Staff Bylaws. Interventional cardiology is a branch of cardiology that deals specifically with the catheter based treatment of structural heart diseases. Interventional cardiology is separate and unique and has been designated as its own unique specialty by The Centers for Medicare & Medicaid Services (CMS), a division of the U.S. Department of Health and Human Services. LMC intentionally and fraudulently initiated the precautionary suspension without performing review by an interventional cardiologist, who was qualified to undertake a review of the quality and standard of care provided by MARSHALL.

11. The Peer Review Committee intentionally and fraudulently recommended a precautionary suspension without proper procedure and review by a qualified medical professional. The Medical Executive Committee affirmed the recommendation of the Peer Review Committee, again on the same pretextual grounds hereinabove discussed, and the results

of both the initial precautionary suspension and the action by the Medical Executive Committee was pre-determined before such action was taken.

12. The Defendant Hospital refused and/or failed to factor into their analysis information provided by Plaintiff. Letters sent by Plaintiff to the Defendant Hospital related to these issues were reportedly "lost", "never received", or otherwise not considered.

13. Following the Medical Executive Committee's action in affirming the recommendation of the Peer Review Committee, a so-called "Fair Hearing" was held, at which the actions recommended to be taken against MARSHALL by LMC were allegedly "reviewed".

14. The "Fair Hearing" was similarly pretextual in nature, the result was pre-determined, and despite overwhelming evidence that the actions taken had no basis, the Hearing Committee affirmed the previous recommendations to terminate MARSHALL's interventional cardiology privileges. This action was solely motivated by economic considerations, was not related to issues based on Plaintiff's medical practices or competence, and was pre-textual.

15. Following the Hearing Committee's affirmance, LMC's Board of Trustee terminated MARSHALL's interventional cardiology privileges permanently, again with no medical basis, and pretextually, for the same economic reasons as had been the basis of the prior actions taken against Plaintiff.

16. MARSHALL has exhausted all administrative remedies which he was required to exhaust prior to filing this civil action.

**COUNT I – Fraudulent and Sham Peer Review**

17. MARSHALL hereby reiterates and incorporates by reference all of the allegations contained in paragraphs 1 through 16 as if set forth herein.

18. This is an action for damages as a result of a sham and fraudulent peer review, in excess of Fifteen Thousand Dollars ($15,000), the jurisdictional limits of this Court.

19. At all times material hereto, MARSHALL was a member of the Medical Staff of LMC.

20. As is described in the allegations common to all Counts, MARSHALL was subjected to purported peer review processes by LMC on several occasions, which were shams and fraudulent in nature.

21. More specifically, those peer review processes were outside the statutory coverage of the provisions of Section 395.0191 and 395.0193 of the Florida Statutes because they were "kangaroo courts", the results of which had already been preordained and predetermined before they began, and based solely on economic considerations, as described above. Therefore, none of the immunities provided for in these sections of the Florida Statutes, or any others, have any applicability.

22. The motivation of LMC and its authorized representatives in connection with the peer review processes to which he was subjected was to destroy the reputation and career of MARSHALL, and had nothing to do with the quality of care he rendered to patients at LMC.

23. The fraudulent and sham peer review to which MARSHALL was subjected occurred as a result of intentional fraudulent actions by authorized representatives of LMC who were members of the Medical Staff leadership, and who were acting under the direct instruction of LMC's authorized representatives, with the specific intent and objective of destroying MARSHALL's reputation and ability to practice medicine, and solely and exclusively based upon economic considerations.

24. The intentionally fraudulent nature of the actions taken against MARSHALL pursuant to the fraudulent and sham peer review is also evidenced by the fact that LMC chose to permanently revoke MARSHALL's clinical staff privileges in interventional cardiology, which under the Medical Staff Bylaws required that a determination be made that MARSHALL was a threat of harm to patients, and there is no evidence of any such threat or harm, in the record before the peer review bodies. In addition, LMC terminated MARSHALL's interventional cardiology privileges but continued to all him to practice and maintain privileges in general cardiology, for which LMC must have determined MARSHALL was not a threat to patients.

25. As a result of the fraudulent and sham peer review to which MARSHALL was subjected, he has suffered damages in an amount in excess of Fifteen Thousand Dollars ($15,000) which is the minimum jurisdictional amount of this Court. Those damages include but are not limited to the following:

A. Loss of revenues, and/or income which MARSHALL would have received had his privileges for interventional cardiology not been wrongfully suspended and revoked;

B. Future costs MARSHALL will incur if he is required to relocate to find employment as a result of LMC's adverse report to the National Practitioner Data Bank which has damaged his professional reputation;

C. Future of loss revenues which will not be received as a result of MARSHALL's inability to perform interventional cardiology at Largo Medical Center, or at other hospitals if he cannot secure employment or staff privileges as a result of the wrongful termination of his clinical interventional privileges and the negative impact it has and will have on MARSHALL's medical career;

D. The loss of employability due to the actions of the Defendant, and the filing by Defendant of the Adverse Action Report with the National Practitioner Data Bank; and

E. Damage to MARSHALL's reputation as a physician as a result of the events which transpired.

WHEREFORE, the Plaintiff requests and award from this Court for the damages he has suffered as set forth above, including costs, and reserving the right to amend the Complaint to add a claim for punitive damages in the future.

**COUNT II – Defamation**

26. MARSHALL hereby reiterates and incorporates by reference all of the allegations contained in paragraphs 1 through 16 as if set forth herein.

27. This is an action for damages in excess of $15,000.00 against LMC for defamation.

28. LMC knowingly and willfully published false and defamatory statements in its Adverse Action Report submitted to the National Practitioner's Data Bank ("NPDB") with respect to the Precautionary Suspension of MARSHALL's interventional cardiovascular privileges imposed as a result of the fraudulent and sham peer review LMC published, and has continued to publish, false and defamatory statements concerning MARSHALL, and his reputation as a physician, to the National Practitioner's Data Bank including but not limited to the following:

A. The initial report of the precautionary suspension of MARSHALL's interventional cardiology privileges.

B. The subsequent report of the permanent revocation of MARSHALL's interventional cardiology privileges.

29. When LMC submitted said Report to the National Practitioner Data Bank, it was fully aware that the underlying facts upon which the precautionary suspension was based upon were false, and that the so-called "peer review" that resulted in the precautionary suspension

reported to the National Practitioner Data Bank was a sham and had been intentionally and fraudulently conducted.

30. LMC has engaged in an ongoing publication of these knowingly and intentionally false and defamatory statements by the ongoing publication of the statements to the National Practitioner's Data Bank and state reporting agencies, which ongoing publication was knowingly allowed and authorized by LMC, without any retraction or withdrawal thereof by LMC.

31. These knowingly and intentionally false and defamatory statements were defamatory, per se, and were also made with express malice and with the specific intent to damage MARSHALL. MARSHALL has been damaged in an amount in excess of $15,000.00 as a direct and proximate result of the defamatory statements published by LMC including damages for loss of personal and business reputation, humiliation, mental suffering and anguish, and pecuniary loss including lost revenue and/or income, past, present, and future.

32. The actions of LMC were willful, wanton, and malicious and MARSHALL reserves the right to assert a claim for punitive damages pursuant to the provisions of Fla. Stat. 768.72.

WHEREFORE, the Plaintiff, JAMES CLIFFORD MARSHALL, D.O., respectfully requests that this Court enter Judgment in his favor and against the Defendant, LARGO MEDICAL CENTER, INC., in an amount in excess of Fifteen Thousand Dollars ($15,000), which is the minimum jurisdictional amount of this Court, with interest thereon, and the costs of the action, together with all further relief deemed just and proper by this Court.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted this 3rd day of March, 2017.

KRAMER, SOPKO & LEVENSTEIN, P.A.
Attorneys for Plaintiff
2300 S.E. Monterey Road, Suite 100
Stuart, FL 34996
Telephone: (772) 288-0048
Facsimile: (772) 220-4931
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@kslattorneys.com
Secondary E-mail: ptreadway@kslattorneys.com
Secondary E-mail: sbartlett@kslattorneys.com
Abby M. Spears, Esq.
Primary E-mail: aspears@kslattorneys.com
Secondary E-mail: ptreadway@kslattorneys.com
Secondary E-mail: skenerson@kslattorneys.com

By: **/S/Richard H. Levenstein**
Richard H. Levenstein
Florida Bar No. 0235296
Abby M. Spears
Florida Bar No. 44662

VERIFICATION

STATE OF FLORIDA )
)
COUNTY OF Pinellas )

Before me, the undersigned authority, personally appeared JAMES CLIFFORD MARSHALL, D.O., who was sworn and states the foregoing Complaint is true and correct.

James Clifford Marshall DO

JAMES CLIFFORD MARSHALL, D.O.

Sworn to and subscribed before me on this 4 day of January, 2017.

Susan J. Popp
Notary Public

[SEAL]

Personally known ________ or Produced Identification FL DL

Type of Identification produced FLDL M624 443 56 250

SUSAN J. POPP
Notary Public, State of Florida
Commission# FF 952628
My comm. expires Jan. 21, 2020